Rollie D. Simmons and Joseph N. Simmons, Trading as R. D. Simmons and Son et al., Plaintiffs-Appellants, v. Retail Clerks International Association, Affiliated with the American Federation of Labor, Local No. 896 of Retail Clerks International Association, Affiliated with the American Federation of Labor et al., Defendants-Appellees.

## Term No. 55–F–2.

Fourth District.

February 28, 1955.

Released for publication April 21, 1955.

Feirich & Feirich, of Carbondale, for appellants.

Peyton H. Kunce, of Murphysboro, and S. G. Lippman, of Chicago, for appellees.

MR. JUSTICE BARDENS delivered the opinion of the court.

Plaintiffs are owners and clerks of R. D. Simmons & Son store in Metropolis. They filed a complaint for temporary and permanent injunction against defendants praying that defendants be restrained from further picketing of plaintiffs' premises. Defendants are the international and local union of retail clerks affiliated with the American Federation of Labor and officers and members thereof as representatives of the entire membership. A full hearing was had in the trial court at which the parties stipulated that the evidence heard could be considered in determining whether a permanent injunction should issue. Decree was entered denying injunctive relief and plaintiffs appealed.

The picketing was carried on in a peaceful manner, not en masse, and the placards being carried were truthful. They carried the legend "The employees of R. D. Simmons & Son are not members of Retail Clerks' Union, Local No. 896." The sole question before the lower court was whether the picketing was being carried on for an illegal purpose. The national labor relations board had refused jurisdiction.

The complaint charges a conspiracy to force the employer company to enter into an unlawful contract to deal exclusively with the union without regard to the employees' wishes and a conspiracy to force the employees to become members of the union.

The evidence shows that on November 10, 1953, the following letter was sent to R. D. Simmons & Son:

"Harrisburg, Illinois
November 10, 1953

"Registered Mail

Mr. R. D. Simmons & Son
609 Market
Metropolis, Illinois

Attn: R. D. Simmons

Dear Sir:

"The undersigned is a representative of the Retail Clerks Union, Local #896. Such union admits to membership, among others, Department Store Employees.

"We feel certain that your Department Store Employees are nonmembers of any union. We are certain that they are not members of our Local 896. It is our desire to publicize that fact for the purposes hereinafter set forth, but before doing so, we wish to extend to you the courtesy of confirming or denying our beliefs. In making this inquiry, namely, Are your Department Store employees members of or represented by a Union?—I wish to emphasize that I am merely seeking information about a situation which could have changed within the last few days. It is not my purpose or the purpose of my union to make any illegal demands or requests of any nature upon you, your company or any of its officers, or any of your said employees. Whatever course of conduct you or your said employees adopt will be the result of their own free choice and judgment, so far as we are concerned. Therefore, I wish to impress upon you that neither my

431

union or I, now or at any time in the future will make any illegal demands upon you or them in any connection whatsoever.

"As stated above, I am requesting confirmation or correction of my belief that your said employees are not members of any union. If you should fail to answer this inquiry before midnight of Friday, November 20, 1953, I shall interpret your silence as confirmation of my belief. If, on the other hand, I am mistaken, I kindly request that you write me at the address shown below and advise me as to the true status of affairs before the above mentioned hour and date.

"It is the intention of my Local Union, with the full support and sanction of my International, the District Council, and the local Labor movement, in the event your said employees are not Union members, to picket the Department Store in a peaceful and orderly manner, for the sole purpose of advertising to the public the fact that your said employees are non-union. My union might also contemplate advertising such fact through the newspapers, radio and possibly other media.

"Our purpose in conducting such an advertising program are, first, to let the people of this community know that your said employees are non-union and by which publicity only to persuade the public to patronize those firms which do employ union members. In this manner we hope, with the approval and assistance of the public, to provide and secure steady employment for our members working in union firms. Secondly, it is our hope that assuming the public supports our viewpoint, your said employees will be persuaded by the weight and influence of such public opinion, to the conclusion that Unionism is preferable and that it (the public) is desirous of dealing with Union store employees in making purchases.

"There are several points I would like to reiterate and emphasize.

"First, my union and I are not making any demands upon you, your company or any of its officers, to execute or to agree to any contract with our union covering any of your said employees. As an employer, you cannot legally do so at this time because you are only allowed to contract with a union representing a majority of your employees. Therefore, even if you should offer to execute such a contract with my union covering such employees, my union and I would be obliged at this time to refuse same until your employees have lawfully authorized you to make such a contract.

"Second, my union and I are in no way requesting or demanding that you or any of the officers of your company, endeavor to interfere with, restrain or coerce your employees to join my union or any union. My union and I have been advised by our attorney that under present law, the employees have a right to join or not to join a union. My union respects these rights of the employees and we insist that your employees be free in such matters, that you, your company and its officers refrain from interfering, restraining or coercing your said employees in the exercise of their said rights. In like manner, my union and I and its officers and agents will not in any way endeavor to interfere with, restrain or coerce your said employees in the exercise of said rights.

"Third, please advise your said employees that they are free and will continue to be free to come and go as they please, and to work or not to work as they please. No one with any authority from my union will ever molest them, threaten them, coerce them or interfere with them in any way.

"Fourth, if at any time you observe or have your attention called to the fact that any of our pickets are molesting or in any way improperly or unlawfully conducting themselves with reference to any of your customers or persons having lawful business relations with you or your company, you are requested to pre-

433

sent such facts immediately to our union, the Retail Clerks Local 896, and an immediate investigation will be made. If your report is found to have substance, the picket or pickets responsible will be instantly discharged and such practice will be discontinued. The pickets used by us are under strict instructions not to do any of such things. On the contrary, they are instructed to conduct themselves in a quiet, orderly and peaceful manner at all times.

"In conclusion, I would like to advise that it is the intention of our union to let this picket line speak for itself. We have not and do not intend to enter into or to attempt to enter into any secret agreements or the like with any other union or union officers, or with any of your suppliers or any of your customers, to refrain from doing business with you. Should any of your suppliers or customers refrain or hesitate to do business with you, it will be solely due to the fact that such suppliers or customers, by the use of their own free choice and independent judgment, has decided not to cross a picket line.

"Awaiting your reply, I am

/ s / Guy Price,
Rec. Secy, Local 896.

1009 South Ledford Street,
Harrisburg, Illinois
Retail Clerks, A. F. of L.

CC: Vernon A. Housewright, Pres.
James A. Sufferidge, Secy-Treas.
Fred Ammond, Director of Organizing
Sam Castellano, General Organizer
Jack Falk, Secretary of District # 1

Seal Local No. 896 Harrisburg."

On December 2, 1953, picketing commenced and has since continued. At the time of trial in May 1954,

plaintiff, R. D. Simmons, testified that since the picketing started the store had suffered a decrease in sales of 30 to 40 per cent and that certain union carpenters and electrical workers had refused to come in and work on some needed repairs in the store. The plaintiff-employees of R. D. Simmons were paid partially on a commission basis and did not wish to join the defendant union. Defendant Price, secretary and business agent of local union 896, and defendant Castellano, general organizer with the international union, both testified that the purpose of the picketing was to inform the public that the store does not employ union labor, to persuade the public to patronize those firms that do employ union labor and thus to promote the interests of the local union in order to be able to negotiate for better working conditions, hours, and wages. Both witnesses testified that it was not the purpose of the picketing to force the employer to enter into a contract nor to force the employees to join the union. Both also said that pickets would be removed if its employees joined the union because the legend on the placards would be untrue.

The chancellor had this case under advisement for over a month and wrote an opinion reviewing the pleadings, the evidence, many of the United States and Illinois Supreme Court cases on the question of peaceful picketing, and he reviewed and reconciled the cases of Bitzer Motor Co. v. Local 604, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, 349 Ill. App. 283, and Schuster v. International Ass'n of Machinists, 293 Ill. App. 177. He then made specific findings as follows:

"In conclusion the court finds, from the weight of the evidence offered in this case, that the picketing here in question is being carried on free from violence or threats and is being done in a peaceful manner, and that said picketing is not being carried on for the pur-

435

pose of trying to force the employer to enter into a contract with the union and thereby coerce his employees into joining the union, but, on the contrary, for the purpose of informing the people in and about the city of Metropolis that the employees of the R. D. Simmons & Son's store are not union members and to persuade the people to patronize those firms that do employ union members, and for the further purpose of persuading the employees of said store to become union members. This court is of the opinion that such purpose is not illegal and against the public policy of the State of Illinois, as defined in the Bitzer case, which this court recognizes as the law in our State."

In the Bitzer case we held that if an illegal purpose was charged, the trial court had the duty to determine this question and that its findings should not be disturbed unless manifestly wrong. This duty at times must, of necessity, present a close and delicate question. In the instant case the specific determination that the lower court was required to make was the sincerity of the avowed purpose of the defendants. When a finding is made by the trial court, our duty is to ascertain if it has a reasonable basis in the evidence. See also Local Union No. 10, United Association of Journeymen, Plumbers and Steamfitters of the United States and Canada of the American Federation of Labor, et al. v. Graham, 345 U. S. 192, 97 L. Ed. 946, 73 S. Ct. 585.

Plaintiffs argue that the defendants' stated purpose is a sham; that the sending of the letter to Simmons was, in itself, a threat; that he is put in a position of being compelled to coerce his employees to join the union in order to get rid of the pickets; that the employees are compelled to join the union in order to re-establish their previous earnings so far as commissions are concerned; and that these are conclusions logically deduced from admitted facts. These arguments, of course, have force and undoubtedly were

436

considered by the trial court. On the other hand, defendants argue that the letter itself and their sworn testimony regarding the purpose of picketing is controlling and that they have a constitutional right to picket for the purpose of promoting interests of union labor. Ellingsen v. Milk Wagon Drivers' Union of Chicago Local No. 753, 377 Ill. 76.

From our review of the whole case and the careful consideration given by the chancellor, we conclude that the findings of the trial court have a reasonable basis in the evidence and are not manifestly wrong. The decree of the lower court is therefore affirmed.

Decree affirmed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.